UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICARDO ADAME, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-139 |
| | § | |
| REFUGIO COUNTY, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND RECOMMEDATION</u>

This is a race discrimination case brought by Ricardo Adame against his former employer Refugio County.  Pending is Defendant's Motion for Summary Judgment, to which Plaintiff has responded and Defendant has replied.  (D.E. 27, D.E. 30 and D.E. 33).  Both parties have also filed sur-replies.  (D.E. 35 and D.E. 36).  On April 7, 2017, this matter was referred to the undersigned for case management and for making recommendations as to all dispositive motions.  (D.E. 37); 28 U.S.C. § 636.  For the reasons set forth below, it is respectfully recommended Defendant's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

## I.   JURISDICTION AND VENUE

The Court has subject matter jurisdiction predicated upon federal question jurisdiction because Plaintiff brought this action under 42 U.S.C. §§ 1981 and 1983.  Venue is proper because the events giving rise to Plaintiff's claims occurred in this district.  28 U.S.C. § 1391.

## II.     FACTUAL BACKGROUND

Plaintiff, a Hispanic male, worked as a sheriff's deputy for the Refugio County Sheriff's Office from 2007 through February 4, 2015.  (D.E. 1, Page 3).  During this time, Plaintiff worked under Refugio County Sheriff Robert Bolcik from January 1, 2009 until February 4, 2015, when his employment was terminated. (D.E. 1, Page 3 and D.E. 32, Exhibit 5).[1]  Plaintiff filed the pending action on May 3, 2016, under 42 U.S.C. §1983 and 1981, alleging the motivating factor in his termination was his race.  (D.E. 1).

## III.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).

---

[1]The termination letter, dated February 4, 2015, states, "To Deputy Ricardo Adame, Effective Wednesday, February 04, 2015 your services with the Refugio County Sheriff's Office are no longer needed.  Robert Bolcik, Refugio County Sheriff."  Additionally, Plaintiff alleges he was initially hired as a sheriff's deputy, was promoted to patrol sergeant in 2008, and then to Narcotics Sergeant in 2013.  (D.E. 1, Page 3).

The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)(refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323. The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmovant may not

rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

## IV.    STANDARD FOR RACE-BASED EMPLOYMENT DISCRIMINATION[2]

To prevail on his discrimination claims, a plaintiff may present his case of discriminatory intent by direct or circumstantial evidence, or both.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)(citation omitted). If direct evidence of discrimination exists, no further evidence is required.  *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 782 (5th Cir. 2015)(citation omitted).  If a Plaintiff produces only circumstantial evidence to prove discrimination, his claim is analyzed under the burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

Absent direct evidence, the *McDonnell Douglas* analysis proceeds through three, burden shifting steps.  *Ray v. United Parcel Serv.*, 587 F. App'x 182, 188-89 (5th Cir.

---

[2]Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., and 42 U.S.C. § 1983 and 1981 provide parallel causes of action for public employees alleging racial discrimination and require the same proof to establish liability.  *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 490-91 (5th Cir. 2011)(citing *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 166 (5th Cir. 2007)); *see also Outley v. Luke & Assoc.*, 840 F.3d 212, 216 (5th Cir. 2016).

2014).  To establish a prima facie case of racial discrimination, the plaintiff must show: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably.  *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *see also Wesley v. Gen. Drivers, Warehousemen and Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011).

If Plaintiff successfully establishes a *prima facie* case of discrimination, a presumption of discrimination arises and the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the employment action taken against the Plaintiff.  *See Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)(citing *McDonnell Douglas*, 411 U.S. at 802).  The burden on the employer at this stage is one of production, not persuasion and does not involve a credibility assessment.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000); *see also Alvarado*, 492 F.3d at 611.

If Defendant satisfies this burden, the burden shifts back to the Plaintiff who must prove "the legitimate reasons offered by the Defendant were not its true reasons, but were a pretext for discrimination" or, alternatively, that the Defendant's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the Plaintiff's protected characteristic.  *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)(citing *Reeves*, 530 U.S. at 139); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 556-57

(5th Cir. 2007). "[T]he plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.*

## V. ANALYSIS

### A. Direct Evidence of Discrimination

Plaintiff contends he has both direct and circumstantial evidence of direct discrimination. If Plaintiff has produced direct evidence which, if believed, "proves the fact of discriminatory animus without inference or presumption," no further evidence would be required and this Court would not proceed through the *McDonnell Douglas* burden shifting analysis. *Sandstad*, 309 F.3d at 897; *Kelly*, 632 F. App'x at 782. However, for reasons discussed below, the undersigned recommends the evidence Plaintiff asserts is direct evidence of discrimination is, at best, circumstantial evidence and therefore, his claim should be analyzed under the burden-shifting framework.

Plaintiff generally cites to his own affidavit alleging it contains direct evidence of discrimination. (D.E. 30, Pages 4-5). While Plaintiff does not identify which part of his affidavit he asserts is direct evidence of race discrimination, the only reference to race in Plaintiff's affidavit is as follows:

> Sheriff Bolcik is prejudiced against Hispanics. For example: after Sheriff Bolcik saw Refugio Police Chief Andy Lopez, Jr., driving a pickup with wheels he did not approve of, he remarked "typical Mexican" and, referring to former County Judge Rene Mascorro's candidacy for County Judge, the Sheriff remarked "that's all we need – a fucking Mexican." I myself heard him make those statements, and Sgt. Raymond also heard the remark about Chief Lopez because after the statement Sgt. Raymond came to me to ask me if I heard him say that and I said I did hear it. (D.E. 30-1, Page 3).

Plaintiff alleges the remark about Chief Lopez was made in 2013 and the remark about Judge Mascorro was made in 2008. (D.E. 33-1, Page 3). If true, these remarks are highly inappropriate and offensive and in some situations, should be sufficient to create a question of fact and require a trial. However, in the present case, the undersigned recommends these statements, assuming they are true for purposes of summary judgment analysis, be considered "stray remarks" and therefore not be considered direct evidence of discrimination. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010)(Stray remarks standing alone are insufficient to defeat summary judgment.); (D.E. 33, Pages 2-3). In the Fifth Circuit, workplace "[c]omments are evidence of [direct] discrimination only if they are '1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Id.* (holding that evidence of a comment made almost a year before termination was insufficient to raise a genuine issue of material fact as to pretext)(citation omitted); *see also Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 476 (5th Cir. 2015)(Comments must meet all four factors to "constitute 'direct evidence'" of discrimination)(citation omitted). In applying this test, the Fifth Circuit has held that "our ultimate focus is on whether the comments prove, 'without inference or presumption, that race was a basis in employment decisions' in the plaintiff's workplace." *Etienne*, 778 F.3d at 476. "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." *Jackson*, 602 F.3d at 380.

Defendant argues that, under this doctrine, Sheriff Bolcik's alleged comments "are too remote in time and too attenuated from Plaintiff's termination, which took place well over a year after the most recent comment was made, to be probative of the question of whether being Hispanic influenced his termination." (D.E. 33, Page 3). The undersigned agrees. *See Nguyen v. Univ. of Tex. School of Law*, 542 F. App'x 320, 325 (5th Cir. 2013)(statements made one year before Plaintiff not reappointed "too remote in time and too attenuated…to be probative of the question of whether racial animus influenced adverse employment actions")(citation omitted). Plaintiff alleges Sheriff Bolcik made these two comments in 2008 and 2013, well over a year prior to Plaintiff's 2015 termination. *See Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)(Comments made one year prior to decision not to renew Plaintiff's contract considered stray remarks). Further, these comments were not related to the employment decision at issue. *Hamilton v. AVPM Corp.*, 593 F. App'x 314, 323 (5th Cir. 2014)(No evidence primary decision maker's comments were related to the decision to terminate the Plaintiff); *see also Auguster*, 249 F.3d at 405 (Stray remarks "insignificant in comparison to the evidence of [Plaintiff's] unfitness as a teacher and thus is insufficient, on its own, to establish discrimination"). While these comments may be admissible as circumstantial evidence,[3] they do not, standing alone, constitute direct evidence of discrimination sufficient to defeat summary judgment.

---

[3]There are two different standards for considering statements such as these for purposes of summary judgment, depending on whether the statements are being offered as direct or circumstantial evidence. The four part standard for considering these statements as direct evidence is listed above. As circumstantial evidence, "[a]n oral statement exhibiting

Plaintiff also asserts his analysis of the employment applications received by the Refugio County Sheriff's Office during Sheriff Bolcik's tenure and the subsequent hiring decisions are direct evidence of discrimination. (D.E. 30, Page 5). In his response, Plaintiff first alleges the Sheriff's Office received 69 applications from Hispanic applicants and 88 applications from non-Hispanic applicants and, "on information and belief, only 1 Hispanic was hired from those applications compared to at least 6 non-hispanics who were hired. These documents are very voluminous." (D.E. 30, Page 5). However, in his subsequent supplemental response, Plaintiff alleges his exhibits "indicate that 33.8% percent of non-Hispanics were hired, and 19.6% of Hispanics were hired (12 of 61 Hispanic applications and 24 of 71 non-Hispanic applications)." (D.E. 31, Page 2). Plaintiff fails to explain his varying calculations. Plaintiff also cites to the same exhibits arguing that Hispanic deputies were paid less on average than non-Hispanic deputies. (D.E. 30, Page 5 and D.E. 31, Pages 1-2). Specifically, Plaintiff asserts the average yearly pay for Hispanic deputies was $47,586[4] and the average yearly pay for non-Hispanic deputies was $51,847, citing to employees' W-2 forms. (D.E. 30, Page 5 and D.E. 31, Page 2). However, after reviewing the documents cited by Plaintiff, there is no mention of the race of any of the applicants or employees. (D.E. 31, Pages 2-3 and D.E.

---

discriminatory animus may be used to demonstrate pretext or…it may be used as additional evidence of discrimination" when "made by a person primarily responsible for the adverse employment action." *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003)"(citation omitted). These statements are considered as circumstantial evidence later in this M & R.

[4]This is the amount Plaintiff asserts in his supplemental response. However, in his earlier response, Plaintiff asserted the average yearly pay for Hispanic deputies was $47,705. (D.E. 30, Page 5).

32, Exhibits 8A-13).   Plaintiff has failed to support his allegations and further fails to sufficiently detail how he made these calculations.    Further, Plaintiff admits his calculations are incomplete as he "left out the salaries of deputies Jose Rodriguez and Luis Flores because their W-2(s) did not show a full year's pay." (D.E. 35, Page 4).

Additionally, Plaintiff fails to cite to any evidence that Sheriff Bolcik is responsible for determining deputies' salaries.   Defendant cites to the affidavit of Rita Trojcak,[5] the Refugio County Treasurer and Human Resources Director, who avers the Refugio County Sheriff does not set the base salary for employees who work under his/her control.  (D.E. 33-2, Page 1).  Defendant further details discrepancies in Plaintiff's calculations, specifically that Plaintiff failed to include all deputies in his calculations, including two Hispanic deputies hired in 2015; failed to account for overtime reflected in each employees' W-2; and included Chief Deputy Wiginton in his calculations who gets

---

[5]Plaintiff objects to the admission of this affidavit pursuant to Federal Rule of Civil Procedure 26(a) and 37(c) because Defendant did not previously disclose Ms. Trojcak.  (D.E. 35, Page 1).  In response, Defendant argues Plaintiff, in his complaint, did not raise any arguments related to "discrepancy in pay between Hispanics and non-Hispanics; lack of hiring Hispanics by Sheriff Bolcik; and Plaintiff's excuses for missing work (specifically that he was taking vacation)."  (D.E. 36, Pages 1-3).   Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by [the Rules], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   In this instance, the undersigned recommends the affidavit be admitted as the delay is substantially justified.  Alternatively, the affidavit should be admitted as harmless as (1) the affidavit is important to properly considering Plaintiff's newly raised allegations, (2) Plaintiff is not prejudiced having previously been given the records referenced in the affidavit, (3) any prejudice caused by Defendant's failure to disclose Ms. Trojcak as a witness could be cured by allowing both parties to take her deposition and to supplement the summary judgment record if needed, and (4) Defendant's explanation for the delay is reasonable as none of the above allegations were raised in Plaintiff's complaint.  *See Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 598-599 (5th Cir. 2015); *see also Lifecare Mgmt. Serv., LLC v. Ins. Mgmt. Adm'rs., Inc.*, No. 3:08-cv-1641-M, 2010 WL 3283059, *3 (N.D. Tex. Aug. 18, 2010)(detailing four part test for harmlessness).

paid a higher base salary than all other sheriff deputies because of his supervisory position. (D.E. 22, Pages 7-8). Additionally, Ms. Trojcak avers that based on her review of employment records and the Refugio County Budgets, during the 2013-2014 budget year, there were a total of 19 employees at the jail under Sheriff Bolcik's control and of those employees, 10 were Hispanic, including those holding the top two ranking positions of Captain and Lieutenant. (D.E. 33-2, Page 2). Ms. Trojack further avers Sheriff Bolcik hired seven Hispanic sheriff's deputies and workers at the jail between July 2014 and April 2015, including Miranda Montalvo who he hired as Jail Captain in April 2015. (D.E. 33-2).

Plaintiff's allegations and calculations are not supported by the evidence in the record. Therefore, Plaintiff has failed to provide direct evidence of racial discrimination in either his affidavit or in the employment records provided.

### B.    Mixed-Motive Analysis

Because the undersigned recommends there is no direct evidence of discrimination, Plaintiff's claim should be analyzed under the *McDonnell Douglas* burden-shifting framework.

### 1.    Prima Facie Case and Legitimate, Nondiscriminatory Reason

In the pending motion, Defendant does not dispute that Plaintiff has alleged a *prima facie* case. (D.E. 27, Page 7). Instead, Defendant asserts Plaintiff was terminated for an excessive amount of absences from work during the three months prior to his termination, not because he is Hispanic. Therefore, Defendant has the burden at this

stage, but it is one of production, not persuasion and does not involve a credibility assessment. *Reeves*, 530 U.S. at 142; *Alvarado*, 492 F.3d at 611.

Defendant has set forth substantial evidence to support a finding that Plaintiff was terminated for his absences from work and not on the basis of race discrimination. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)("The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action.")(quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993)).

Defendant provides Plaintiff's signed time sheets which indicate Plaintiff had frequent absences during the three months before his termination. (D.E. 27-1, Pages 4-12). More specifically, these time sheets indicate Plaintiff missed work on approximately thirty (30) days between November 10, 2014 through February 4, 2015, using either holiday, vacation, sick leave or compensatory time. (D.E. 27-1, Pages 4-12). The time sheets also indicate Plaintiff's typical work hours were from 7:00 a.m. to 4:00 p.m. (D.E. 27-1, Pages 4-12). Additionally, Plaintiff testified his work hours as SRO were Monday through Friday before school started to shortly after school ended. (D.E. 27-3, Pages 3 and 7). The text messages sent from Plaintiff to Chief Deputy Sheldon Wiginton where Plaintiff stated he would not be reporting for work for various reasons during this time demonstrate Plaintiff frequently missed work with little notice, often after the time he was to report to work. (D.E. 27-1, Pages 13-33).

Defendant also cites to Sheriff Bolcik's affidavit[6] where he averred Plaintiff's absences created a scheduling problem in the office and created discord between the deputies required to cover Plaintiff's shifts.[7] (D.E. 29). Sheriff Bolcik further averred that on February 2, 2015, two days before Plaintiff was fired, Plaintiff missed work and was out of accumulated time off but was given special permission not to have his pay docked. (D.E 29, Page 2). Sheriff Bolcik also averred that after Plaintiff failed to report the next two days, he made a decision to terminate Plaintiff's employment and "[t]he fact that Sgt. Adame was Hispanic had no bearing what so ever on my decision to terminate Sgt. Adame [rather it was his] lack of dedication to his job evidenced by his excessive amount of absences…" (D.E. 29, Page 2).

Additionally, Defendant cites to Plaintiff's deposition testimony where Plaintiff acknowledged he took a lot of time off,[8] the proper procedure for requesting time off was

---

[6]Sheriff Bolcik's affidavit attached to the pending motion is unsigned. (D.E. 27-1). However, on February 7, 2017, less than a week after the pending motion was filed, Defendant submitted a signed affidavit. (D.E. 29). In his Response, Plaintiff objects to this affidavit because it was not initially signed and sworn to. (D.E. 30, Page 1). As this error was timely corrected, the undersigned recommends Plaintiff's objection to this evidence be **OVERRULED**.

[7]Sheriff Bolcik averred Plaintiff's "consistent absences from work created a scheduling nightmare for other deputies who would have to respond to calls concerning the school districts as a result of the acting SRO's absences from work. In addition, when Sgt. Adame would actually communicate that he was going to miss a day of work, he would regularly text the Chief Deputy right around the time his shift was beginning to start. This last minute notice, placed the Sheriff's Office in a difficult position to move schedules arounds so that another deputy could visit the school districts and perform Sgt. Adame's duties as SRO. Furthermore, there were also times that Sgt. Adame did not report at all that he would miss the day of work—he would simply just not show up." (D.E. 29, Page 2).

[8]After discussing specific days Plaintiff was not at work, Plaintiff was asked, "Would you agree with me that that was a lot of time during a three-month period of time?" to which he replied, "Yeah, I agree. Like I said, the, the accumulation of hours is the ones that took so much time." (D.E. 27-3, Page 9).

to contact Chief Deputy Wiginton which he would do by text message,[9] and that, after Plaintiff quit in 2013 after a female deputy was hired, Sheriff Bolcik hired him back a few days later upon Plaintiff's request.[10] Defendant further cites to Chief Deputy Wiginton's deposition testimony that there was talk around the department about "how anybody could take that much time off…" and how Sheriff Bolcik had expressed concerns to him about Plaintiff's absences.[11]

Defendant also references Deputy Glen Grasham's deposition testimony that when Plaintiff was not working or present at the schools, he, as the former SRO, would receive calls from schools to handle any issues that arose. (D.E. 27, Pages 10-11 and D.E. 27-5, Pages 4-5). Defendant also references Deputy Grasham's testimony that Plaintiff

---

[9]Plaintiff was asked, "When you were—as the SRO, if there was a day you weren't going to show up for work or something happened, you went to the chief?" to which he replied, "Of course." (D.E. 27-3, Page 4). Further, Plaintiff was asked, "Do you recall texting the chief when you would miss days" to which he replied, "Of course." (D.E. 27-3, Page 9).

[10]Plaintiff testified he quit and "threw my badge at [Sheriff Bolcik] or placed it on his desk or where he was sitting." Plaintiff then stated he walked out the door and then, after a few days, came back to the office and spoke to Sheriff Bolcik who gave Plaintiff his job back. (D.E. 27-3, Pages 10-12).

[11]Chief Deputy Wiginton was asked, "Was there ever any talk around the department that you were aware of that, that suggested that Mr. Adame was staying home when there wasn't anything wrong with him?" to which he replied, "There was, there was always constant mentioning as to how anybody could take that much time off and, you know, but that's with anybody there. They are always gabbing, so…" (D.E. 27-4, Page 3). Chief Deputy Wiginton was later asked, "Sheriff Bolcik's concern about Mr. Adame's being out, how long had that gone on before he was fired? How long, how long had he expressed concerns to you about Mr. Adame's attendance?" to which he replied, "I would say more than, more than three months, less than, you know, less than a year. I mean, to say a specific date, no, sir, I can't." (D.E. 27-4, Pages 4-5). Chief Deputy Wiginton was then asked, "But as best as you can remember, it was more pronounced--or it really all started in the last year of his employment there?" to which he replied, "Yes, sir, his absences became very routine there at the end, yes, sir." (D.E. 27-4, Page 5).

replaced him as SRO because Plaintiff needed a regular schedule due to his medical conditions.[12] (D.E. 27-5, Page 3). Additionally, Defendant references Stephen Maldonado's affidavit[13] that, as the principal of the Austell-Tivoli ISD Junior High and High School, Plaintiff did not regularly visit the campus or call him as the previous and subsequent SROs did and therefore, he would contact Deputy Grasham, the former SRO, for assistance. (D.E. 27-6).

Based on the foregoing evidence, it is respectfully recommended Defendant has met the burden of showing a legitimate, nondiscriminatory reason for Plaintiff's termination.

### 2. Evidence of Pretext or that Racial Discrimination Was a Motivating Factor in Plaintiff's Termination

Since Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, to survive summary judgment Plaintiff must offer sufficient evidence to create a genuine issue of material fact that either (1) Defendant's reason is not true, but is instead pretext for discrimination; or (2) Defendant's reason, while true, is

---

[12]Deputy Grasham stated, "And after five years they asked me, will you do investigations? So I went to investigations." Deputy Grasham further stated, "They made that spot [SRO] for Rick. I was still handling it until they put Rick in there, and they made him SRO because of his heart condition and his pills, and he said his pills messed with his system –his body all the time, and he needed a regular schedule, so sheriff put him SRO [sic]…Medications. He had open heart surgery or something, and he said the medications messed with him for the shift work, so the sheriff made him SRO." (D.E. 27-5, Page 3).

[13]Plaintiff objects to the affidavit of Stephen Maldonado "because defendant never disclosed him as required as a person who had knowledge of relevant facts." (D.E. 30, Page 6). However, on January 25, 2017, Defendant filed Second Supplemental Disclosures pursuant Federal Rule of Civil Procedure 26(a)(1) listing the Austwell-Tivoli I.S.D. and its school board and employees. (D.E. 26, Page 3).

only one of the reasons for the conduct and another "motivating factor" is Plaintiff's race. *Assariathu v. Lone Star Health Mgmt. Assocs.*, 516 F. App'x 315, 319-20 (5th Cir. 2013)(citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Carr v. Sanderson Farms, Inc.*, 665 F. App'x 335, 337 (5th Cir. 2016). For pretext, Plaintiff "must produce substantial evidence." *Outley v. Luke and Assoc.*, 840 F.3d 212, 219 (5th Cir. 2016)(citing *Laxton*, 333 F.3d at 578. "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Auguster*, 249 F.3d at 403 (citation omitted). The Fifth Circuit has "consistently held that an employee's 'subjective believe of discrimination' alone is not sufficient to warrant judicial relief." *Id*. Under the mixed-motive approach, Plaintiff must show his race was a motivating factor in the employment decision. *Easterling v. Tensas Parish Sch. Bd.*, No. 16-30532, 2017 WL 1065531, at *3-4 (5th Cir. Mar. 20, 2017); *see also Smith v. City of St. Martinville*, 575 F. App'x 435, 439 (5th Cir. 2014)(citations omitted). Bare allegations of race discrimination, without more, are insufficient to create a genuine dispute as to material fact. *Smith*, 575 F. App'x at 439 (citing *Giles v. City of Dallas*, 539 F. App'x 537, 545 (5th Cir. 2013). Plaintiff has failed to produce "substantial evidence" that Defendant's proffered reason is pretextual.

In his responses,[14] Plaintiff alleges "Defendant's stated reason for firing plaintiff, i.e. 'excessive absence from work' is pretext." (D.E. 30, Page 1, D.E. 31 and D.E. 32).[15]

---

[14]In his initial response, Plaintiff fails to include his cited summary judgment evidence, other than his own affidavit, because he was unable to scan the documents. (D.E. 30, Page 5). At a

Plaintiff cites to his time sheets which he asserts indicate he missed about 21% of the time he was scheduled to work, not 50% of the time as Defendant alleges. (D.E. 30, Page 1 and D.E. 27-1, Pages 4-32). Plaintiff further argues it is "most striking" he was fired when he was, given the fact that neither the Sheriff or anyone else with his office ever told him his absences were excessive. (D.E. 30, Pages 1-2). Plaintiff avers he never failed to inform his office when he would be absent from work, he was never told his absences were excessive, and he never gave a false doctor's excuse. (D.E. 30-1, Pages 1-2).[16] Plaintiff also avers the "amount of time missed from scheduled work during those months in 2014 was fairly typical of the other months of that year." (D.E. 30-1, Page 2). However, Plaintiff has again failed to explain how he arrived at his percentage calculations. Further, missing work 21% of the time could still be considered excessive

February 24, 2017 status conference before the District Judge, Plaintiff was given leave to submit these documents on a flash drive. Therefore, Plaintiff filed a supplemental response along with a flash drive on March 1, 2017, stating he was unable to file the exhibits via CM/ECF. (D.E. 31 and D.E. 32).

[15]Plaintiff states: "There could be more evidence of pretext. Plaintiff requested that defendant produce the basic personnel files of the Refugio County Sheriff's Deputies as of July 28, 2016 to compare them with plaintiff's personnel file which was produced, but defendant has refused to produce them. Plaintiff asks the Court to order defendant to produce the requested personnel files." (D.E. 30, Page 4). However, Plaintiff has never requested a conference before the Court to discuss this issue and has never filed any motions to compel the production of this evidence. The discovery deadline in this matter expired on February 1, 2017. (D.E. 24). Therefore, Plaintiff's request is untimely and further, Plaintiff has failed to make a proper showing that Defendant should be required to produce this material. Therefore, the undersigned recommends Plaintiff's request be **DENIED**.

[16] In his affidavit, Plaintiff avers he had a heart attack in 2009 which required triple bypass heart surgery. (D.E. 30-1, Page 1). Plaintiff further avers he now has to take medication for high blood pressure and blood thinners which cause weakness and nausea, he has suffered from migraine headaches for the last twenty years requiring prescription painkillers every day for the last ten years, and his health has been in decline since his heart attack which is the main reason he has missed work. (D.E. 30-1, Page 1).

and Plaintiff does not provide any evidence indicating other deputies missed work equal to or more than 21% of the time and were not fired. Additionally, the text messages and time sheets produced by Defendant demonstrate that while Plaintiff may have been paid for days he missed work using holiday, vacation, sick leave or compensatory time, he was absent from work during his normal work hours for approximately 30 days during the three months before he was fired. (D.E. 27-1, Pages 4-33).[17] Further, Plaintiff's time sheets indicate that on February 2, 2015, two days before he was fired, Plaintiff missed work and was out of accumulated time off but was given special permission not to have his pay docked by Sheriff Bolcik but after Plaintiff failed to report the next two days, his pay was docked and he was terminated. (D.E. 27-1, Page 12 and D.E. 29, Page 2). Further, Chief Deputy Wiginton testified that a day or two after Plaintiff was fired, Sheriff Bolcik told him Plaintiff was fired due to Plaintiff's absences from work and that

---

[17]Defendant argues "Plaintiff just did not show up for work and claimed his accrued time off, so that he could still get paid for those days." (D.E. 33, Page 5). Defendant also points out the discrepancies in Plaintiff's evidence, specifically that in his affidavit, Plaintiff avers he was on vacation from January 5-9, 2015, but on January 5, 2015 at 6:52 a.m. Plaintiff texted Chief Deputy Wiginton, "Chief, not feeling well. Migraine." (D.E. 33, Page 5; D.E. 30-1, Page 2; and D.E. 27-1, Page 27). Defendant asserts this is an example of how Plaintiff's affidavit, "given after the fact and in light of the threat of dismissal of his suit" directly contradicts "the hard evidence in an attempt to survive summary judgment dismissal." (D.E. 33, Page 5-6). Further, it appears Plaintiff submitted a medical excuse for his absences during this time period, and its authenticity was questioned by Sheriff Bolcik the day he terminated Plaintiff. (D.E 32, Exhibit 1, Pages 76-80 and Deposition Exhibit 6). Sheriff Bolcik testified he called Plaintiff's medical provider, who had signed the "Return to Work/School Certificate" indicating Plaintiff had been under his care from January 5, 2015 through January 7, 2015 for a migraine, because he questioned its authenticity because of Plaintiff's frequent absences and because Plaintiff's wife worked at the medical provider's office. (D.E. 32, Exhibit 1, Pages 76-80). It appears Plaintiff may have been seen at the medical provider's office during this time but by a different provider than the one who purportedly signed the excuse. (D.E. 32, Exhibit 1, Pages 76-80 and D.E. 30, Page 3).

he, at Sheriff Bolcik's request, printed out Plaintiff's text messages to him regarding days missed from work for the past two years and gave them to Sheriff Bolcik. (D.E. 32, Exhibit 2, Deposition Pages 8-10).

Plaintiff also alleges, as evidence of pretext, that Sheriff Bolcik was, on January 21, 2015, "checking every criminal database he had access to looking for evidence of wrongdoing by [P]laintiff" shortly before Plaintiff was fired and this is evidence of pretext. (D.E. 30, Page 2). Plaintiff cites to Sheriff Bolcik's deposition testimony that it appeared someone in the Refugio County Sheriff's Office generated a driver's license report for Plaintiff on January 21, 2015. (D.E. 32, Exhibit 1, Deposition Pages 59-66 and Deposition Exhibit 1 dated January 21, 2015 ).[18] Plaintiff further alleges that someone in the Refugio County Sheriff's Office created inquiry reports searching for any charges or active warrants for Plaintiff. (D.E. 32, Exhibit 1, Deposition Pages 66-76 and Deposition Exhibits 2-5 dates January 21, 2015). However, while noting these searches did not find any evidence of wrongdoing by Plaintiff, Plaintiff fails to demonstrate how this evidence demonstrates pretext, i.e. that Plaintiff was not fired because of his absences. The testimony provided indicates these reports were standard procedure for all deputies.[19]

---

[18]Sheriff Bolcik testified he did not know who generated the report but that he did "know that periodically we would do all employees to check for statuses on their driver's license and/or arrests in other counties that we might not know about. But, yes, sir. But I couldn't tell you who did that." (D.E. 32, Exhibit 1, Deposition Pages 59). However, Sheriff Bolcik later testified, regarding a criminal history check for Plaintiff, that he requested an employee run the report for him. (D.E. 32, Exhibit 1, Deposition Pages 73-74).

[19]Sheriff Bolcik testified, regarding Plaintiff's driver's license report, "Every two years, three years or so we'd run everybody's driver's license, all the employees to make sure they still have a driving record because of our automobiles that we have to drive and insurance purposes." (D.E. 32, Exhibit 1, Deposition Page 64). Sherfiff Bolcik also testified, as to the other reports,

While Plaintiff asserts Sheriff Bolcik "was looking for justification to fire plaintiff when he did these checks shortly before firing him, and this supports plaintiff's pretext claims," there is no evidence supporting this assertion. (D.E. 35, Page 4); *Morris*, 144 F.3d at 380 (Plaintiff "may not rely merely on allegations" and "unsubstantiated assertions.")

After he was terminated, Plaintiff filed a claim for unemployment compensation. (D.E. 30, Page 4). In support of his pretext argument, Plaintiff cites to Texas Workforce Commission finding that Plaintiff's employer fired him because his "medically verifiable illness" which was not "considered misconduct connected with work." (D.E. 30, Page 4 and D.E. 32, Exhibit 6 dated March 9, 2015). However, Plaintiff's reliance on this decision is misplaced. The findings of the Texas Workforce Commission may not be "used as evidence in an action or proceeding." *St. Romain v. Fort Bend Cty. Sheriff's Office*, No. H-09-2273, 2011 WL 306411, at *3 (S.D. Tex. Jan. 27, 2011)(citing Tex. Labor Code § 213.007)("A finding of fact, conclusion of law, judgment or final order made under this subtitle is not binding and may not be used as evidence in an action or proceeding, other than an action or proceeding brought under this subtitle, even if the action or proceeding is between the same or related parties or involves the same facts.")

Additionally, while Plaintiff cites to Plaintiff's peace officer qualifications and two letters of praise he received from civilians he assisted, Defendant does not dispute

---

"Again, it goes back to this. We would do them periodically on all of the employees." (D.E. 32, Exhibit 1, Deposition Page 69). Sheriff Bolcik also testified that he did not know how to run the reports himself, he did recall asking anybody to run these reports, that all of his officers and his communications officer know how to run them, if his signature appeared as requesting a report then he did request the report (D.E. 32, Exhibit 1, Deposition Pages 70-76).

Plaintiff was qualified for the position but rather that he was fired because he was excessively absent from work.  (D.E. 31 and D.E. 32, Exhibit 7).  The fact Plaintiff was qualified for the position and that his replacement was Caucasian makes it clear Plaintiff has established a *prima facie* case of discrimination, however, this evidence does not refute Defendant's stated reason for Plaintiff's termination.

The undersigned again considers the alleged statements of Sheriff Bolcik previously discussed regarding Chief Lopez and Judge Mascorro in 2008 and 2013, respectively, this time as circumstantial evidence of pretext.  *Laxton*, 333 F.3d at 583. ("An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or…it may be used as additional evidence of discrimination" when "made by a person primarily responsible for the adverse employment action.")  However, such stray remarks "cannot suffice as the sole evidence of pretext."  *Beltran v. Univ. of Tex. Health Science Ctr. at Houston*, 837 F.Supp.2d 635, 645 (S.D. Tex. 2011)(citing *Phillips v. TXU Corp.*, 194 F. App'x 221, 228 (5th Cir. 2006)(citation omitted)("After *Reeves*…so long as the remarks are not the only evidence of pretext, they are probative of discriminatory intent.")  The undersigned recommends Plaintiff has provided no other circumstantial evidence of race discrimination and as such, these stray remarks alone are insufficient to create a genuine issue of material fact as to whether Defendant's proffered reason for terminating Plaintiff was pretext for race discrimination.

## VI.    RECOMMENDATION

Plaintiff makes a number of allegations in his complaint and in his responses that he does not support with sufficient evidence at this stage.  Because Plaintiff fails to

produce any sufficient evidence that, even in a light most favorable to him, would suggest that Defendant discriminated against him on the basis of his race rather than terminating him for excessive absences, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

Respectfully submitted this 5th day of May, 2017.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).